THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
AT FRESNO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SAMUEL STONE,<br><br>　　　　　Defendant. | CASE NO. CR12-0072-JCC<br><br>**DEATH PENALTY CASE**<br><br>ORDER ON MOTION FOR BILL OF PARTICULARS |

This matter comes before the Court on Defendant Samuel Stone's motion for a bill of particulars (Dkt. No. 66). Having thoroughly considered the parties' briefing and the relevant record, the Court finds an evidentiary hearing and oral argument unnecessary and hereby GRANTS IN PART and DENIES IN PART the motion for the reasons explained herein.

## I. BACKGROUND

In March 2012, a grand jury indicted Stone on two counts of murder: murder by a federal prisoner serving a life sentence in violation of 18 U.S.C. § 1118(a), and first-degree murder in violation of 18 U.S.C. § 1111(a)–(b). (Dkt. No. 1 at 1–2.) The indictment charges that Stone, "on or about July 30, 2003, at the United States Penitentiary Atwater, . . . did, with malice aforethought, unlawfully kill another person and human being, Michael Anita, willfully, deliberately, maliciously and with premeditation." (*Id.*)

The following background comes from Stone's earlier-filed motion to compel:

> In July 2003, Mr. Stone was serving a life sentence in the custody of the United States Bureau of Prisons ("BOP"). He was housed in cell 121 of the SHU at the United States Penitentiary in Atwater, California ("USP Atwater"). . . . In late April 2003, staff at USP Atwater first placed Michael Anita and then, on July 15, 2003, Angelo Fuentes into the SHU cell with Mr. Stone. . . .
>
> According to [a] document provided by the government, at approximately 5:12 a.m. on July 30, 2003, Mr. Stone pressed the distress alarm button inside SHU cell 121. Staff responded and, upon inquiry, Mr. Stone reportedly stated that he had killed Mr. Anita. Guards looked through the broken window of the cell door and saw Mr. Anita's prone body on floor. . . .
>
> Medical staff arrived in the SHU and pronounced Mr. Anita dead. A rope made of what appear[ed] to be braided strips of a bed sheet was wrapped around his neck. He had been stabbed in the chest and had bruises on his head and face. A pen protruded from one of his eyes and a pencil protruded from the other.
>
> According to the information contained in the documents thus far proved [*sic*] to the defense, prison staff and the FBI recount that Mr. Stone immediately said that he had killed Mr. Anita. In these accounts, Mr. Stone also exculpated Mr. Fuentes. Apparently, Mr. Fuentes made no statement at all. No other person was in a position to witness what happened. There is no audio or video recording of what occurred in the cell. . . .

(Dkt. No. 34 at 11–13.)

The United States is seeking a sentence of death. (Dkt. No. 3.)

> In death-eligible homicide cases, the [Federal Death Penalty] Act instructs, the jury must respond sequentially to three inquiries; imposition of the death penalty requires unanimity on each of the three. First, the jury determines whether there was a killing or death resulting from the defendant's intentional engagement in life-threatening activity. See 18 U.S.C. § 3591(a)(2). Second, the jury decides which, if any, of the Government-proposed aggravating factors, statutory and nonstatutory, were proved beyond a reasonable doubt. See § 3593(d). Third, if the jury finds at least one of the statutory aggravators proposed by the Government, the jury then determines whether the aggravating factors "sufficiently outweigh" the mitigating factors to warrant a death sentence . . . . § 3593(e).

*Jones v. United States*, 527 U.S. 373, 407–08 (1999) (Ginsburg, J., dissenting) (footnotes omitted). "The term 'nonstatutory aggravating factor' is used to refer to any aggravating factor that is not specifically described in 18 U.S.C. § 3592." *Id.* at 378 n.2 (majority opinion).

Here, the United States' notice of intent to seek the death penalty lists four threshold findings it will seek to prove as the basis for imposing a sentence of death under 18 U.S.C. § 3591(a): that Stone intentionally (1) killed Anita, (2) inflicted serious bodily injury that resulted in Anita's death, (3) participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, and Anita died as a direct result of the act, and (4) engaged in an act of violence, knowing that the act created a grave risk of death to a person, such that participation in the act constituted a reckless disregard for human life, and Anita died as a direct result of the act. (Dkt. No. 3 at 2 ¶¶ A.1–4.)

The notice of intent also lists five statutory aggravating factors the United States will seek to prove: (1) death during the commission of another crime, (2) previous conviction of offense for which a sentence of death or life imprisonment was authorized, (3) previous convictions of other serious offenses, (4) heinous, cruel, or depraved manner of committing offense, and (5) substantial planning and premeditation. (*Id.* at 2–3 ¶¶ B.1–5.) *See* 18 U.S.C. § 3592(c). Finally, the notice lists four nonstatutory aggravating factors: (1) pattern of violent criminal conduct, (2) lack of remorse, (3) future dangerousness, and (4) victim impact evidence. (Dkt. No. 3 at 3–4 ¶¶ C.1–4.) *See* 18 U.S.C. § 3593(a).

## II. DISCUSSION

Federal Rule of Criminal Procedure 7 provides that "[t]he court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). The bill has three functions: "to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes." *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) (quotation marks omitted). "In determining if a bill of particulars should be ordered in a specific case, a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made

by the government." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983).

"Full discovery . . . obviates the need for a bill of particulars." *Giese*, 597 F.2d at 1180; *see Long*, 706 F.2d at 1054 (same). At the same time, however, "Rule 7(f) is not intended to serve as a vehicle for obtaining discovery from the government." *United States v. Grace*, 401 F. Supp. 2d 1103, 1106 (D. Mont. 2005) (citing *Cooper v. United States*, 282 F.2d 527, 532 (9th Cir. 1960)). Rather, a bill of particulars "is intended to supplement the indictment by providing more detail of the facts upon which the charges are based." *United States v. Inryco, Inc.*, 642 F.2d 290, 295 (9th Cir. 1981); *see Grace*, 401 F. Supp. 2d at 1106 ("The rule exists to allow defendants to request that the charge, where necessary, be particularized; it should not be invoked to 'force the Government to spread its entire case before the accused.'") (quoting *Cooper*, 282 F.2d at 532).

By its terms, Rule 7 applies to indictments and informations—not notices of intent in which the Government puts the defendant on notice of the *mens rea* and aggravating factors it will seek to prove as a basis for imposing the death penalty. "However, the Sixth Amendment still requires that a defendant receive sufficient notice [of these items] to enable him to prepare a defense." *United States v. Williams*, No. CR-05-920-RSWL, 2008 WL 4644830, at *1 (C.D. Cal. Oct. 15, 2008); *see United States v. Llera Plaza*, 179 F. Supp. 2d 464, 470–71 (E.D. Pa. 2001) ("[A]t a minimum, due process requires a defendant to receive sufficient notice of aggravating factors to enable him to respond and to prepare his case in rebuttal.") (quotation marks omitted); *United States v. Lujan*, 530 F. Supp. 2d 1224, 1269–70 (D. N.M. 2008) (district courts "have . . . inherent powers to order the government to provide additional information [like that provided in a bill of particulars] on certain aggravating factors in order to ensure a meaningful opportunity to prepare a defense"). The key question here, then, is whether the indictment, notice of intent, and other disclosures by the Government enable Stone and his counsel to prepare for trial.

### A. *Mens Rea*

Stone first argues that the Government has failed to "provide any notice of the facts

underlying [its] . . . theory of premeditated first-degree murder," including the theory "that the violence was willfully inflicted or premeditated . . . as opposed to [in] self-defense, in defense of Mr. Fuentes, or mutual combat." (Dkt. No. 66 at 6.) Stone thus asks for a bill of particulars "[i]dentify[ing] the factual basis for the allegations . . . that Mr. Stone acted 'willfully, deliberately, maliciously and with premeditation,'" that he "intentionally caused the death of . . . Anita," and that he murdered Anita after substantial planning and premeditation. (*Id.* at 6–8.)

The indictment, notice of intent, and discovery provided by the Government "particularize" the charge of Stone's *mens rea* sufficiently to allow Stone to prepare for trial and avoid surprise. This discovery includes Stone's statement to the officer who responded to his distress signal that he had just killed Anita; the videotaped two-hour interview in which Stone confessed to murdering Anita and described both how and why he did so; and his inculpatory statements to other witnesses. (Dkt. No. 76 at 2–3, 7–8.) Stone, armed with the knowledge that the Government will rely on this evidence to prove his *mens rea*, can adequately prepare for trial and will not be surprised when the Government submits this evidence to the jury. *See, e.g.*, *United States v. Duncan*, No. CR07–23–N–EJL, 2008 WL 656036, at \*6 (D. Idaho Mar. 6, 2008). Stone is free to argue to the jury, as he argues in his motion, that his statements taking responsibility for Anita's death "are not inconsistent with Mr. Anita being killed in the course of mutual combat, even combat that he initiated, or violence initially directed towards Mr. Fuentes." (Dkt. No. 66 at 7.) That those arguments may be available to Stone is not a reason to order a bill of particulars as to the *mens rea* the Government will seek to prove.

**B.     Angelo Fuentes**

Stone also complains that it "is not clear" why the Government has not charged Fuentes with Anita's homicide. (Dkt. No. 66 at 6.) He asks for an order requiring the Government to "[i]dentify the factual basis for the allegation . . . that Mr. Stone caused the death of Michael Anita, as opposed to Angelo Fuentes having caused his death." (*Id.* at 8.) But the question for purposes of a motion for a bill of particulars is whether Stone has sufficient information to

prepare to defend himself against the Government's charge that *Stone* killed Anita. If Stone believes the Government is withholding information implicating Fuentes in the murder or calling the evidence of Stone's responsibility for it into question, the proper course of action is to file a motion to compel the production of exculpatory evidence—something Stone has already done.[1] And, of course, Stone is free to try to raise a reasonable doubt in the jury's mind about his responsibility for Anita's murder by presenting circumstantial evidence that it was Fuentes, and not Stone, who planned or committed the homicide. That such evidence of Fuentes' involvement may be available to Stone is not a reason to require the United States to produce a bill of particulars as to the charges against Stone.

### C. Heinousness

The Government will seek to prove the statutory aggravating factor that Stone "committed the offense in an especially heinous, cruel, or depraved manner in that it involved serious physical abuse to the victim." (Dkt. No. 3 at 3 ¶ B.4.) In his motion for a bill of particulars, Stone moves for an order requiring the Government to "[i]dentify the factual basis for the . . . 'serious physical abuse'" allegation. (Dkt. No. 66 at 7.) As the Government explains in its opposition to Stone's motion, the Government has already made Stone aware of the evidence it will rely on to try to prove a "[h]einous, cruel, or depraved manner of committing [the] offense," 18 U.S.C. § 3592(c)(6): "the medical examiner's report, autopsy photographs, toxicology report and examiner's notes"; "video and photographs of the crime scene"; and Stone's "statement wherein he described how he killed the victim." (Dkt. No. 76 at 9.) The Government's notice of intent, along with the discovery it has provided to Stone, are sufficient to enable Stone to prepare a defense and prevent surprise. "While the particular pieces of evidence

---

[1] Indeed, parts of Stone's motion for a bill of particulars and his reply brief are better described as requests for discovery. (*E.g.*, Dkt. No. 81 at 6 ("The government . . . has [not] produced all evidence in its possession."); *id.* at 8 ("The government is . . . refusing to provide plainly exculpatory evidence in the form of a witness statement implicating Fuentes in Anita's death.").) These issues are before Magistrate Judge Austin; the Court will not address them here.

the Government will use as to [this] factor and how it will be used would surely aid the defense, the Constitutional notice requirements do not demand that level of specificity." *Duncan*, 2008 WL 656036, at *7.

Stone argues that, in order to prepare a defense to the heinousness aggravating factor, he needs to know "(1) . . . the injuries [the Government] contends were inflicted prior to death that constitute 'serious physical abuse,' (2) . . . why [the Government believes] they are 'serious physical abuse' beyond physical harm that exists in any homicide, and (3) . . . the factual basis for attributing those injuries [to] Mr. Stone's intentions." (Dkt. No. 66 at 8.) That is because, Stone contends, this aggravating factor "cannot be established on the basis of post mortem injuries." (*Id.* at 7–8.) For this proposition, however, Stone cites to three out-of-circuit district court cases and a Ninth Circuit case declining to resolve that very question. *See United States v. Mitchell*, 502 F.3d 931, 977 (9th Cir. 2007) ("in this case we do not need to resolve" the question whether "the text [of § 3592(c)(6)] on its face . . . encompass[es] post-mortem mutilation"). Even if it *were* Ninth Circuit law that the jury cannot consider evidence of post-mortem physical abuse in deciding whether the Government has proved a heinous manner of killing, the proper avenue for mounting an attack on the Government's use of such evidence is a motion to dismiss that factor or a motion in limine, not a motion for a bill of particulars. The Government has sufficiently particularized its heinousness aggravating charge to allow Stone to mount such an attack if he wishes to do so.

### D. Continuing Pattern of Violent Criminal Conduct

The Government will seek to prove the nonstatutory aggravating factor that Stone "from at least age fifteen and continuing into his adult life, engaged in a continuing pattern of violent criminal conduct against other individuals." (Dkt. No. 3 at 3 ¶ C.1.) Stone asks for a bill of particulars identifying each event the Government will rely upon to establish this pattern. In response, the Government agrees to provide a list of these events by September 30, 2013. (Dkt. No. 76 at 10–11.) Stone complains that the Government promises only a "'a list of the acts of

violent criminal conduct by defendant,' but not . . . additional information . . . such as dates, locations and descriptions." (Dkt. No. 81 at 9.) The Court assumes that that is what the Government meant when it promised a list, but for the sake of clarification, the Court ORDERS the Government to include in the list the dates, locations, and descriptions of the acts on which it intends to rely. Stone further objects that September 30, 2013 falls after the deadline for filing motions challenging the death penalty. The Court agrees that Stone should have access to the Government's promised list in advance of that deadline and ORDERS the Government to produce the list by August 9, 2013.

### E. Lack of Remorse

The Government will also try to prove the nonstatutory aggravating factor that Stone has shown no remorse for the alleged murder. (Dkt. No. 3 at 3–4 ¶ C.2.) Stone asks the Court to order the Government to "[i]dentify the factual basis" for this allegation. (Dkt. No. 66 at 9.) In support, Stone argues that the allegation is false. Stone is welcome to put evidence of its falsity on at trial, but that is not a valid reason to order the Government to provide a bill of particulars as to this factor. *See, e.g.*, *Grace*, 401 F. Supp. 2d at 1111 ("The Defendants' true objection seems to be to the theory of the government's allegations, not the lack of specificity in what is alleged. . . . [A] motion for a bill of particulars is not the appropriate vehicle [for lodging such objections]."). Moreover, the Government has turned over the evidence it plans to use to prove lack of remorse: Stone's statements to the officer who responded to his distress call; the interview in which he described how and why he killed Anita; all written and recorded statements by Stone in the Government's possession; all statements Stone made to government agents or law enforcement officers; all audio and video recordings of oral statements made by Stone that were preserved; and Stone's medical and mental health records and central file. (Dkt. No. 79 at 2–3, 7–8, 15, 19 ¶¶ III.A.1–3 & 6, III.B.1.b(14)–(15), (30) & (47).) The extent of the discovery provided by the Government on the issue of lack of remorse obviates the need for an informational outline as to this factor. *Cf. Giese*, 597 F.2d at 1180; *Long*, 706 F.2d at 1054.

### F. Future Dangerousness

The Government will also try to prove as a nonstatutory aggravating factor that Stone "poses a continuing danger to others in that he is likely to commit additional acts of violence in any setting against inmates, prison guards and other officials at correctional institutions where he is or will be incarcerated, as evidenced by his past acts of violence and pattern of violence." (Dkt. No. 3 at 4 ¶ C.3.) Stone asks the Court to order the Government to "[i]dentify each of the 'past acts of violence' and each constituent part of the 'pattern of violence.'" (Dkt. No. 66 at 10.) In response, the Government agrees to provide a list of these acts by September 30, 2013. (Dkt. No. 76 at 12.) For the reasons discussed *supra*, the Court ORDERS the Government to include in the list the dates, locations, and descriptions of the acts and to provide the list by August 9, 2013.

Stone further asks the Court to order the Government to "[i]dentify the factual basis for the allegation . . . that Mr. Stone's past behavior shows what his future behavior will be." (Dkt. No. 66 at 11.) He goes on to argue that evidence of past dangerousness is inherently unreliable as a predictor of future dangerousness. That may be true—and Stone can argue that to the jury—but it does not explain how the list promised by the Government is insufficient to enable defense counsel to prepare to make that argument. *Cf., e.g.*, *Grace*, 401 F. Supp. 2d at 1115 ("The Defendants do not seem confused as to what conduct the government seeks to punish; they strenuously dispute whether that conduct is illegal. Such disputes are not resolved through a motion for a bill of particulars."). Stone also asks the Government to "[i]dentify the factual basis for the allegation . . . that the Bureau of Prisons cannot hold Mr. Stone in 'any setting' where he would not represent a continuing threat to staff and other inmates." (Dkt. No. 66 at 11.) But the Government has already identified the factual basis for that allegation: In its notice of intent, it alleges that Stone "poses a continuing danger to others . . . , *as evidenced by* his past acts of violence and pattern of violence"—a list of which it has promised to produce. (Dkt. No. 3 at 4 ¶ C.3 (emphasis added).) Again, Stone is free to present to the jury the evidence he discusses in his motion to the effect that he has not presented a danger to others during the almost ten years

since the homicide. And he is welcome—as he has already done—to file a motion to compel the Government to produce evidence pertaining to the ability of the Bureau of Prisons to safely house him in an administrative maximum facility. (Dkt. No. 78.)

### G. Victim Impact

The Government also seeks to prove the nonstatutory aggravating factor that Stone "caused injury, harm, and loss to Michael Anita's family as evidenced by the impact of his death upon his family." (Dkt. No. 3 at 4 ¶ C.4.) Stone asks the Court to order the Government to "[i]dentify the evidence underlying the 'victim impact' aggravating circumstances." (Dkt. No. 66 at 11.) The Government argues in response that victim impact evidence is routinely introduced in death penalty cases and reminds the Court that it has promised to disclose its victim-impact witnesses by July 15, 2014. (Dkt. No. 76 at 15–16.) That such evidence is routinely introduced at trial does not respond to Stone's argument that he needs to know what that evidence will be *now*, in order to prepare to respond to it and prevent unfair surprise. The Court agrees with Stone that a more particularized outline of the victim-impact evidence on which the Government plans to rely is warranted here—and sooner than July 15, 2014—to enable effective preparation for trial. *See, e.g.*, *Duncan*, 2008 WL 656036, at *8. The Court ORDERS the Government, by August 9, 2013, to identify the evidence it will rely on to prove this aggravating factor.

### H. Final Paragraph of Notice of Intent

The final paragraph of the notice of intent provides:

> The United States further gives notice that, in support of the imposition of the death penalty, in addition to evidence of the above-listed aggravating factors, it intends to rely upon all the evidence admitted by the Court at the guilt phase of the trial and the offenses of conviction as alleged in the Indictment as they relate to the background and character of the defendant, SAMUEL STONE, his moral culpability, and the nature and circumstances of the offenses charged in Counts One and Two of the Indictment.

(Dkt. No. 3 at 4.) Stone asks the Court to order the Government to provide the "facts . . . [that] fall within the government's assertion that it will rely on 'all the evidence admitted by the Court

at the guilt phase of the trial' to demonstrate that Mr. Stone's background and character are such that he should be put to death." (Dkt. No. 66 at 12.) In support of this request, Stone argues that "[t]he catch-all at the end of the government's Notice of Intent is no different than the circumstances used to justify death sentences prior *to Furman v. Georgia*, 408 U.S. 238 (1972)" (Dkt. No. 66 at 12)—*i.e.*, "sentencing procedures that create a substantial risk that the punishment will be inflicted in an arbitrary and capricious manner" in that they fail to "define the crimes for which death may be the sentence in a way that obviates standardless sentencing discretion." *Godfrey v. Georgia*, 446 U.S. 420, 427–28 (1980) (quotation marks and indications of alteration omitted). For example, in *Godfrey*, the Court held that "a sentence of death based upon no more than a finding that the offense was 'outrageously or wantonly vile, horrible and inhuman'" constituted an "arbitrary and capricious infliction of the death sentence" because "[a] person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.'" *Id.* at 428–29. Stone thus appears to take issue not with the lack of *specificity* of the Government's notice that it intends to use evidence of Stone's background and character and of the circumstances of the offense in the penalty phase, but rather with the Government's plans to rely on these general factors in arguing for a death sentence.

In response, the Government contends that "[t]his paragraph [in the notice of intent] does not set forth a separate aggravating factor," but rather "is merely putting the defendant on notice that [the Government] will rely on all of the evidence presented during the guilt phase, which will not be repeated in penalty, in support of its request that the defendant be sentenced to death." (Dkt. No. 76 at 16 n.4.) The Court does not agree that that is the plain meaning of the paragraph. The paragraph implies that the Government will produce (1) evidence of the aggravating factors of which it has given notice *and* (2) evidence of four *additional* aggravating factors: (a) unsympathetic background, (b) bad character, (c) moral culpability, and (d) egregious nature and circumstances of the offense. To the extent the Government intended for this paragraph merely to give notice that it will rely on evidence from the guilt phase to prove the

aggravating factors enumerated in its notice of intent, it did not use sufficiently precise language to convey that message. In any event, such notice is superfluous. Section 3593(a) requires the Government to give notice only of "the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death"; it goes without saying that the Government can rely on evidence from the guilt phase to prove those factors—the Government does not need to tell the defendant in the notice of intent that it will do so.

In sum, Stone advances a reason for striking the final paragraph of the notice of intent as a reason to order the Government to produce an informational outline as to that paragraph. Because the relief requested does not correspond to the grounds for the objection, the Court DENIES Stone's request but ORDERS the Government to consider striking this paragraph itself. If it does not, the Court will seriously consider a future motion by Stone to strike it.

## III. CONCLUSION

For the foregoing reasons, the Court ORDERS the Government to provide to Stone, by August 9, 2013, (1) a list of the dates, locations, and descriptions of the acts of violent criminal conduct committed by Stone on which the Government intends to rely in attempting to prove the future-dangerousness and pattern-of-violent-criminal-conduct aggravating factors and (2) an informational outline identifying the evidence underlying the victim-impact aggravating factor. The Court otherwise DENIES Stone's motion for a bill of particulars (Dkt. No. 66).

DATED this 16th day of May 2013.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION FOR BILL OF
PARTICULARS
PAGE - 12